**Signed: May 18, 2006**



_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                              No. 05-49326 TD
                                                   Chapter 7
JOHN PAK,

        Debtor.
_____/

**MEMORANDUM OF DECISION**

    Sara L. Kistler, Acting United States Trustee, (the "UST") moves to dismiss the above-captioned case as an abuse of the Bankruptcy Code pursuant to section 707(b)(3).[1]  For the reasons stated below, the motion will be GRANTED.

**BACKGROUND**

    John Pak (the "Debtor"), an individual whose debts are primarily consumer debts, filed a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code on October 31, 2005.  Because this case was commenced after October 16, 2005, it is subject to the amendments to the Bankruptcy Code made by the Bankruptcy Abuse and

---

[1] All statutory references are to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise specified.

Consumer Protection Act of 2005 ("BAPCPA"). As amended by BAPCPA, section 707(b)(1) provides that a chapter 7 case filed by an individual debtor whose debts are primarily consumer shall be dismissed if the Court determines that it constitutes an abuse of the Bankruptcy Code.[2]

The test for determining whether a debtor's case constitutes an abuse pursuant to section 707(b)(1) varies depending on whether the debtor's "current monthly income": (1) exceeds the applicable state median or (2) is equal to or less than it. The case of a debtor whose "current monthly income" exceeds the applicable state median is subjected to a "means test." The "means test" consists of a statutory formula for determining whether the debtor's income in excess of his expenses is sufficient to permit him to pay a specified amount or percentage of his nonpriority unsecured debts during a five year period. If so, the statute creates a rebuttable presumption that his case is abusive. See 11 U.S.C. § 707(b)(2)(A). This presumption may be rebutted by evidence of "special circumstances." See 11 U.S.C. § 707(b)(2)(B).

"Current monthly income" is defined as "the debtor's average monthly income for the six calendar months prior to the filing of the bankruptcy case." See 11 U.S.C. § 101(10A). Because the Debtor was unemployed for most of the six calendar months preceding the filing of his bankruptcy petition, the Debtor's "current monthly income"

---

[2] Formerly, section 707(b) provided for dismissal only if the case constituted a "substantial abuse." Moreover, there was a statutory presumption in favor of granting the debtor relief. 11 U.S.C. § 707(b) (2002).

2

does not exceed the California median income and thus he is not subject to the "means test." As section 707(b)(7) expressly provides, his case cannot be dismissed based on the standard set forth in section 707(b)(2).

This does not mean that his case may not be dismissed as an abuse. The test for determining whether the case of an individual chapter 7 debtor whose "current monthly income" is equal to or less than the applicable state median is set forth in section 707(b)(3). Section 707(b)(3) provides that a case may be dismissed as an abuse based on: (1) bad faith or (2) "the totality of the circumstances ... of the debtor's financial situation...." 11 U.S.C. § 707(b)(3). There is no presumption of abuse under section 707(b)(3). The UST brings her motion to dismiss this case under section 707(b)(3).

The UST does not contend that the Debtor has acted in bad faith by filing his bankruptcy petition. Rather, she contends that "the totality of the circumstances...of the [D]ebtor's financial situation" make this case abusive. The Debtor is now employed, earning slightly over $100,000 a year. He is single, with no dependents.

The Debtor opposes the motion on two grounds. First, he contends that his ability to pay his debts is not part of the "totality of the circumstances" test. Second, he argues that, even if the Court may consider his ability to pay his debts in this context, the totality of the circumstances of his financial situation do not make his case abusive. The Court finds neither of these arguments persuasive.

**ANALYSIS**

**A. CAN DEBTOR'S ABILITY TO PAY BE CONSIDERED UNDER SECTION 707(B)(3)?**

At first blush, the Debtor's contention appears frivolous: i.e., that a debtor's ability to pay his nonpriority unsecured debts may not be considered as part of "the totality of the circumstances...of the debtor's financial situation." What could be more central to the debtor's financial situation than his income and expenses? However, a similar argument, albeit in a slightly different context, is made in a recent law review article authored by respected academics. See Marianne B. Culhane and Michaela M. White, Catching Can-Pay Debtors: Is the Means Test the Only Way?, 13 Am. Bankr. Inst. L. Rev. 665, 678-80 (2005)(the "Culhane-White Article").

The Culhane-White Article was written as a rebuttal to another recent law review article, authored by a Chicago bankruptcy judge, also highly respected for his expertise on BAPCPA. See Eugene Wedoff, Means Testing in the New 707(b), 79 Am. Bankr. L.J. 231 (2005) (the "Wedoff Article"). As noted in the Culhane-White Article, the Wedoff Article states that:

> Because the general abuse provisions of § 707(b)(3) expressly apply when the means test has been rebutted, "passing" the means test does not preclude a discretionary finding of abuse by the court....If a debtor's overall financial circumstances would easily allow the debtor to repay debts...the court may find abuse.

Wedoff Article, at 236, n.8. Thus, Judge Wedoff posits that an above-median debtor's case may be dismissed based on his ability to pay under either section 707(b)(2) or (3).[3]

The Culhane-White Article disagrees with Judge Wedoff's statement. It characterizes his view as a judicial attempt to "fix" an imperfect statute. It opines that the plain language of the statute and canons of statutory construction compel a different conclusion. Culhane-White Article at 677.[4]

The rationale of the Culhane-White Article is as follows: Section 707(b)(2) represents an attempt to remedy two pre-BAPCPA problems, as perceived by Congress. First, section 707(b)(2) establishes definitely that ability to pay, standing alone, is a sufficient ground for dismissal as an abuse. Some courts had previously taken a contrary view.[5] Second, section 707(b)(2) establishes a "bright line" test for a debtor's "ability to pay."

---

[3] Necessarily, the Court presumes, he would also conclude that a below-median debtor's case could be dismissed based on his ability to pay under section 707(b)(3), although not under section 707(b)(2).

[4] As noted above, the issue addressed by these two articles differs somewhat from the issue presented here. These articles address whether a debtor whose "current monthly income" is *above* the median but who passes the "means test" may have his case dismissed based on his ability to pay under section 707(b)(3)(B). The issue presented here is whether a debtor whose "current monthly income is *below* the median (and thus is not subject to the "means test") may have his case dismissed pursuant to section 707(b)(3)(B).

[5] This does not represent a change in the law in the Ninth Circuit. See In re Kelly, 841 F.2d 908, 913-15 (9th Cir. 1988)(ability to pay, standing alone, is sufficient basis for section 707(b) dismissal).

5

One of the problems perceived by Congress in this context was the lack of uniformity of bankruptcy courts' decisions on this issue. Culhane-White Article at 678. According to the Culhane-White Article, part of this "bright line" test is the establishment of the median income as the dividing line for debtors whose ability to pay may serve as the basis for dismissal. Culhane-White Article at 679.

According to the Culhane-White Article, "[t]o say that judges are free under section 707(b)(3) to substitute their own can-pay standards for Congress' means test would render the means test superfluous." It would also go against the canons of statutory construction, requiring statutes to be interpreted so as to be consistent with each other and to give meaning to all parts. Id. at 680.

The Debtor does not cite the Culhane-White Article. However, he argues along similar lines. He notes that the "means test" was established by Congress to eliminate the lack of uniformity in judicial decisions on motions to dismiss under section 707(b). By providing that the "means test" applies only to debtors whose "current monthly income" exceeds the median, according to the Debtor, Congress created a "safe harbor" for all other debtors.[6] Any other view would reintroduce the very judicial discretion that BAPCPA sought to eliminate. The Debtor also quotes various statements by

---

[6]The "safe harbor" language appears to come from a statement made by Senator Hatch. See 151 Cong. Rec. S1787 (February 28, 2005)("[a]fter all these exemptions are applied, including the *safe harbor*, it is estimated that 90 percent of debtor will not be affected by the changes in the repayment provisions of this bill. [Emphasis added]").

6

members of Congress, predicting that BAPCPA will have no effect on debtors whose income is not above the median.

The Debtor recognizes that, but for the timing of his unemployment and the statutory definition of "current monthly income," he would fall into the category of debtors that Congress wished to subject to the "means test." However, he notes that this potentiality was "absolutely predictable to legislators." If Congress had wished to prevent such debtors from falling through the statutory cracks, it could have provided an express provision preventing them from doing so. Courts may not remedy what Congress failed to do.

There do not appear to be any reported decisions on this issue to date. The only recent decisions addressing discrepancies between actual income and expenses and the new statutory definitions for income and expenses have been decided in the context of chapter 13 cases. See In re Jass, 340 B.R. 411 (Bankr. D. Utah); In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006); In re Barr, ___ B.R. ___ (Bankr. M.D.N.C)(2006 WL 1030242). Because these cases construe different statutory provisions, the Court does not find them helpful.

There is a general canon of statutory construction that a specific statute covering the same subject matter as a general one will prevail over the more general one. This canon offers some substantial support for the view taken by the Culhane-White Article. However, this rationale cannot be applied to the debtor whose current monthly income is equal to or less than the median. For this debtor,

7

there is no specific statute--i.e., "means test"--for determining his ability to pay. There is only the more general one: i.e., section 707(b)(3).

The Debtor's argument that Congress knew that there would be debtors whose actual income, due to pre-filing unemployment, would be greater than their statutorily defined "current monthly income" and could have provided for them is easily countered. By enacting section 707(b)(3), Congress did provide for them.

The Court also finds instructive section 707(b)(3)'s use of the phrase "the totality of the circumstances." Prior to BAPCPA, courts considered whether to dismiss a consumer case for "substantial abuse" under section 707(b)(1) based on the "totality of the circumstances." See In re Price, 353 F.3d 1135, 1139 (9th Cir. 2004). All courts considered the debtor's ability to pay to be an important factor in this context. It would be counterintuitive to construe this same phrase, as used in BAPCPA, to exclude a consideration of the debtor's ability to pay.

The Debtor relies heavily on Congress's stated intention, in enacting BAPCPA, to severely limit judicial discretion with respect to section 707(b) motions so as to establish more uniformity. He argues that, by construing section 707(b)(3) as including a consideration of the debtor's ability to repay, Congressional intent is subverted and judicial discretion is reintroduced into the system. He also cites statements from the Congressional Record, assuring the public that the below-median-income debtor's right to obtain bankruptcy relief will not be affected.

Case: 05-49326    Doc# 32    Filed: 05/18/06    Entered: 05/18/06 11:16:24    Page 8 of 16

The Court is not persuaded by these arguments. First, while BAPCPA did severely limit judicial discretion for above-median-income debtors, judicial discretion has not been entirely eliminated. As noted above, the presumption of abuse may be rebutted by evidence of "special circumstances." As to equal to or below-median-income debtors, clearly, judicial discretion will have to be applied to consider the "totality of the circumstances" whether or not those circumstances include consideration of a debtor's ability to pay. Finally, a debtor earning over $100,000 a year cannot fairly complain of being misled by Congressional statements that low income debtors' rights to bankruptcy relief will not be affected by BAPCPA.

For all of these reasons, the Court concludes that the Debtor's actual ability to repay his nonpriority unsecured debts may be considered as part of the totality of circumstances of his financial situation pursuant to section 707(b)(3).

**B. DOES DEBTOR'S CASE CONSTITUTE AN ABUSE UNDER "TOTALITY OF CIRCUMSTANCES" TEST?**

As noted above, the Debtor's fallback argument is that, even if his actual ability to repay his debts is considered, the totality of the circumstances of his financial situation do not make his case an abuse under section 707(b)(3). The UST disagrees. In support of her motion, the UST cites In re Price, 353 F.3d 1135 (9th Cir. 2004), a case decided prior to the enactment of BAPCPA. In Price, the Ninth Circuit enumerated six factors to be considered in determining whether to dismiss a consumer debtor's chapter 7 case as a

"substantial abuse" pursuant to the former version of section 707(b) as follows:

> 1) whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;
> 2) whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some calamity;
> 3) whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;
> 4) whether the debtor's proposed family budget is excessive or extravagant;
> 5) whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and
> 6) whether the Debtor has engaged in eve-of-bankruptcy purchases.

See Price, 353 F.3d at 1139. The UST contends that the majority of these factors support dismissal of the Debtor's case as an abuse. The Debtor disagrees.

The Court finds it unnecessary to resolve this dispute. Unlike the statute addressed in Price, section 707(b)(3) contains two prongs: (1) bad faith and (2) the totality of the circumstances of the debtor's financial situation. Most of the Price factors listed above pertain to the debtor's bad faith, not to his financial situation. The only factor that pertains to his current financial situation is his ability to pay his debts, e.g., through a chapter 13 plan. To analyze this factor, the Court must consider the provisions of chapter 13, as amended by BAPCPA.

The principal issue in this context is which of the two incomes of the Debtor to use in analyzing his ability to fund a chapter 13

10

plan: i.e., his "current monthly income" or his actual and projected future income. Section 1325(b)(1) provides that, if the trustee or an unsecured creditor objects to confirmation, the Court may not confirm the plan unless, among other things, "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period...will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1). Section 1325(b)(2) provides that "disposable income" means "current monthly income received by the debtor...less amounts reasonably necessary to be expended...[for the support of the debtor and the debtor's dependents, charitable contributions, and necessary business expenses]." 11 U.S.C. § 1325(b)(2).

As discussed above, "current monthly income" looks back at the debtor's income during the six calendar months preceding the bankruptcy filing. 11 U.S.C. § 101(10A). The question is whether the insertion of the word "projected" before the phrase "disposable income" means that the Court should instead look forward, at the debtor's actual and anticipated future income.

This question was recently addressed in a chapter 13 context in In re Jass, 340 B.R. 411 (Bankr. D. Utah). In Jass, it was contended that, after filing for bankruptcy, one of the joint debtors had suffered a serious injury, thus increasing their expenses and reducing their projected income. The debtors had an above-median income. Thus, in calculating their projected disposable income, section 1325(b)(3) required their expenses to be determined in accordance with section 707(b)(2)(A) and (B). 11 U.S.C. §

11

1325(b)(3). Section 707(b)(2)(A) requires an above-median-income debtor's expenses to be determined in accordance with guidelines issued by the Internal Revenue Service in a form to be filed when the case is commenced.[7] The debtors contended that the use of the word "projected" before the phrase "disposable income" indicated that post-filing changes in circumstances should be considered. The Jass court agreed. Id. at 414-16. It based its decision on the plain language of the statute.[8]

A case more similar factually to the instant one is In re Barr, ___ B.R. ___ (2006 WL 1030242), another chapter 13 case involving an above-median-income debtor. In Barr, the debtor's financial situation had improved since the six months preceding the bankruptcy filing. The debtor's "current monthly income" showed a negative cash flow whereas her actual disposable income was substantial. The debtor did not want her post-filing change in circumstances to be considered in the confirmation process. The Barr court concluded that it should not be. However, it did not base its decision on a construction of the phrase "projected disposable income."

In Barr, it appears, the only objection to confirmation made by the chapter 13 trustee was based on lack of good faith. See 11

---

[7] Based on the calculations required by the "means test," the Jass debtors could afford to pay $3,625.63 to unsecured creditors. In their plan, they proposed to pay only $790.

[8] Arguably, the debtors could have filed an amended "means test" form to claim the additional expenses as "special circumstances" pursuant to section 707(b)(2)(B). However, the definition of "current monthly income" does not include any category into which a post-filing reduction in income would fit.

12

U.S.C. § 1325(a)(3). The Barr court examined the evolution of confirmation requirements and concluded that a debtor's ability to pay could not be considered in determining good faith under section 1325(a)(3). Barr, at *1-*3. Thus, while the Barr court's decision on the issue presented appears sound, it does not call into question the correctness of the decision in Jass.

The Court agrees with the Jass court that the actual and anticipated future income must be considered, rather than simply his "current monthly income," in determining the debtor's "projected disposable income" for purposes of confirming a chapter 13 plan. Thus, this is also the correct income figure to use in deciding whether to grant or deny a motion to dismiss a chapter 7 case under section 707(b)(3)(B). The Debtor's actual monthly income at present is $5,530.20.

How the Debtor's reasonably necessary expenses should be determined is not at issue. See 11 U.S.C. § 1325(b)(3). Section 1325(b)(3) provides that, if the debtor's "current monthly income" is above the median, these expenses must be determined in accordance with the section 707(b)(2)(A) and (B). However, the Debtor's "current monthly income" is not above the median. Therefore, his actual expenses provide the starting point, subject to reduction to the extent the Court finds that they are not reasonably necessary.

The Debtor claims actual monthly expenses of $3,718.00. This leaves a projected disposable income of $1,117.20. The UST argues that some of the Debtor's expenses are excessive. Moreover, she notes that, even without eliminating any of his claimed expenses, his

13

projected disposable income will allow him to make plan payments of $33,497.28 over a 36 month period.[9]

Because the Debtor has substantial unsecured debt, including substantial nonpriority debt to the Internal Revenue Service, these payments will only amount to 19 percent of his unsecured debts. Thus, the final issue presented is whether a chapter 7 case is abusive if a debtor could pay only a 19 percent dividend to his creditors through a chapter 13 plan. Pre-BAPCPA, the Court generally used a 33-1/3 percent "rule of thumb" in determining motions to dismiss for "substantial abuse" under section 707(b). Three considerations persuade the Court to grant the motion notwithstanding the relatively low percentage payment that the Debtor is capable of making to his creditors through a 36-month chapter 13 plan.

The first consideration is that, by removing the word "substantial" from the phrase "substantial abuse," Congress appears to have expressed an intent that a more stringent standard be applied. This inference is clearly in keeping with the numerous statements by members of Congress concerning the purpose of the consumer amendments in BAPCPA. The second consideration is that, while 19 percent is a relatively small percentage payment, $33,497.28 is a relatively large amount. Finally, without making line-by-line rulings, the Court agrees with the UST that some of the Debtor's claimed expenses are excessive: e.g., $150.00 per month for telephone

---

[9]Under BAPCPA, a debtor's "applicable commitment period" is only 36 months if his "current monthly income" does not exceed the median. 11 U.S.C. § 1325(b)(4)(A). In this context, "current monthly income" is not modified by the word "projected."

services, $850 per month to maintain two cars, and $125.00 for recreational activities. Based on all of these considerations, the Court concludes that the Debtor's chapter 7 case constitutes an abuse and should be dismissed or converted to chapter 13.

**CONCLUSION**

In summary, the Court concludes that, in determining whether to dismiss the case of a debtor whose "current monthly income" does not exceed the median under the "totality of the circumstances" test, the Court should consider whether the debtor has the ability to pay a significant portion of his unsecured claims through a hypothetical chapter 13 plan. Second, in connection with this hypothetical chapter 13 plan, the Debtor's "projected disposable income" should take into account any post-filing change in circumstances, such as increased or decreased income. Based on these legal conclusions, the Court finds that the amount that the Debtor could pay approximately 19 percent of the claims of his nonpriority unsecured creditors over 36 months. Under the circumstances of this case, this makes his chapter 7 case abusive under section 707(b)(3)(B).

The UST's motion is hereby GRANTED with a 14 day stay to give the Debtor an opportunity to request conversion to chapter 13. The UST is directed to submit an order consistent with the conclusions of this Memorandum.

END OF DOCUMENT

15

COURT SERVICE LIST

Minnie Loo
Office of the United States Trustee
1301 Clay St., Ste. 690N
Oakland, CA 94612-5231

Cathleen Cooper Moran
Moran Law Group, Inc.
1674 N. Shoreline Blvd., Ste. 140
Mountain View, CA 94043

16